## Case No. 7,701a.

KENNEDY et al. v. FIRST NAT. BANK.

[5 Cin. Law Bul. 219.]

Circuit Court, D. Indiana. March, 1880.

BANKS AND BANKING—UNAUTHORIZED ACT OF PRESIDENT—RATIFICATION.

[The act of a bank president in discounting with another bank, without authority, a note made to the cashier of his own bank, and having the proceeds placed to the credit of his bank, from which he obtained an equal sum for his personal benefit by misrepresenting the character of the transaction to his cashier, *held* to have been ratified by his bank, through the action of its cashier in drawing for the proceeds of the note, and, together with the vice president, accepting and approving a statement of the account sent to them at the end of the month by the discounting bank.]

[This was an action by Robert F. Kennedy and others against the First National Bank of Monticello to recover money.]

GRESHAM, District Judge. On the 2d day of January, 1879, the Central Bank of Indianapolis discounted a note made by A. W. Reynolds and Joseph C. Wilson to H. Hamlin, cashier of the First National Bank of Monticello, for $2,500, at ninety days. The note was indorsed: "Pay to I. Taylor, A. C., or order, for credit. Joseph C. Wilson, President First National Bank, Monticello, Indiana." The proceeds, less the discount, were placed to the credit of the defendant. The Monticello Bank was a correspondent of the Central Bank, and for some time previous to this transaction had kept an account with it. Wilson, one of the makers and president of the Monticello Bank, wrote to the Central Bank, asking if he would rediscount some of his bank notes. After thus writing to the Central Bank, Wilson came to Indianapolis, and presented a note, of which the note in suit is a renewal, for discount. The Central Bank discounted the note, believing in good faith that it belonged to the Monticello Bank, and that Wilson was acting for said bank. The proceeds were placed to the credit of the Monticello Bank by Wilson's direction. At this time the account of the Monticello Bank with the Central Bank was overdrawn $587. The Monticello Bank proceeded to draw upon this account in the usual course of business, as is shown by a statement rendered February 1, 1879, by the Central Bank. This statement shows that on the 2d of January the proceeds of the note, $2,434 72, were placed to the credit of the Monticello Bank. In due course of mail, the vice president acknowledged the receipt and correctness of this statement, and Hamlin, the cashier, swears that he saw the statement and approved it. When Wilson returned, instead of reporting to Hamlin just how he had raised the money at Indianapolis, he stated that he had placed to the credit of the bank, with the plaintiff, $2,434.72. Believing what Wilson told him to be true, Hamlin then gave Wilson credit on his private account in the Monticello Bank for this sum. This note was not paid at maturity, and the note in suit was executed in renewal. It is not denied that the Central Bank, up to and after the renewal, in good faith, believed the Monticello Bank knew what Wilson had done, and approved of it. It seems that Wilson deceived both banks, and the question is, which shall sustain the loss? Hamlin, the cashier, and the payee in the note, was the proper person to indorse it. The president of the bank has no authority, by virtue of his office, to indorse his bank's paper. The cashier has charge of the bank's money and its notes; he is its proper executive officer; and clearly he, and not the president, is the proper person to indorse its paper. But, in view of what occurred in this case, it will not do to say that this transaction was not between the two banks. The Central Bank discounted the paper for Wilson as president of the Monticello Bank, and placed to its credit the proceeds. After the latter bank was informed of this by letter, it drew upon these proceeds, the cashier signing the checks. At the end of a month a statement of account was forwarded by the Central Bank, in the usual course of business, to the Monticello Bank, and its correctness was approved by both the vice president and the cashier. It thus had knowledge of what had occurred, and ratified Wilson's act. Corporations are bound by the acts of their officers engaged in the business of their employment. The vice president and cashier received the statement forwarded by the Central Bank. They approved the correctness of this statement, and their approval was the approval of the bank. The credit given to the Monticello Bank by the Central Bank was accepted by the former, and it is no longer material whether Wilson's act was authorized or unauthorized. Finding and judgment for the plaintiff for the amount of the note and interest.